IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

IN RE PRESS APPLICATION FOR ACCESS TO THE GOVERNMENT'S MOTION FOR IMMUNITY DETERMINATIONS IN CASE NO. 23-CR-257, UNITED STATES OF AMERICA V. DONALD J. TRUMP

Case: 1:24-mc-00122
Assigned To : Chutkan, Tanya S.
Assign. Date : 10/1/2024
Description: Misc.

Hearing Requested

**PRESS APPLICATION FOR ACCESS TO THE GOVERNMENT'S MOTION FOR IMMUNITY DETERMINATIONS IN CASE NO. 23-CR-257, UNITED STATES OF AMERICA V. DONALD J. TRUMP**

Pursuant to Local Criminal Rules 57.6 and 6.1, Advance Publications, Inc., American Broadcasting Companies, Inc. d/b/a ABC News, The Associated Press, Bloomberg L.P., Cable News Network, Inc., CBS Broadcasting, Inc. o/b/o CBS News, Gannett Co., Inc., Los Angeles Times Communications LLC, National Public Radio, Inc., NBCUniversal News Group, a division of NBCUniversal Media, LLC, The New York Times Company, News/Media Alliance, NOTUS (Allbritton Journalism Institute), POLITICO LLC, Pro Publica, Inc., Radio Television Digital News Association, Reuters News & Media Inc., Society of Professional Journalists, TEGNA Inc., Univision Networks & Studios, Inc., and WP Company LLC d/b/a The Washington Post (together, the "Press Coalition") respectfully move for access to the Motion for Immunity Determinations that the government filed under seal on September 26, 2024 in Case No. 23-cr-257-TSC (D.D.C.), *United States of America v. Donald J. Trump*.

Specifically, and for the reasons set forth in the accompanying Memorandum of Points and Authorities, the Press Coalition requests that the Court (1) immediately unseal the Motion for Immunity Determinations and Appendix in the redacted form that the government has proposed; and (2) as promptly as possible further unseal those filings with only those redactions



RECEIVED
OCT - 1 2024
Clerk, U.S. District & Bankruptcy
Courts for the District of Columbia

that are both "essential to preserve higher values" and "narrowly tailored to serve that interest." *Press-Enter. Co. v. Super. Ct.*, 464 U.S. 501, 510 (1984).

Counsel for the Press Coalition conferred by email on September 27-30, 2024, with counsel for the government and counsel for former President Trump. The government's counsel informed the undersigned that the government's "position on sealing is set forth in ECF No. 246 of the criminal case," and that the government "will otherwise take a position on [the Press Coalition's] filing after [the government] review[s] it in its entirety." Trump's counsel informed the undersigned that Trump takes no position on this motion.

Dated: October 1, 2024            Respectfully submitted,

BALLARD SPAHR LLP

/s/ *Chad R. Bowman*
Chad R. Bowman (#484150)
Charles D. Tobin (#455593)
Maxwell S. Mishkin (#1031356)
Lauren P. Russell (#1697195)
1909 K Street NW, 12th Floor
Washington, DC 20006
Tel: (202) 661-2200
Fax: (202) 661-2299
bowmanchad@ballardspahr.com
tobinc@ballardspahr.com
mishkinm@ballardspahr.com
russelll@ballardspahr.com

*Counsel for the Press Coalition*

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| IN RE PRESS APPLICATION FOR ACCESS TO THE GOVERNMENT'S MOTION FOR IMMUNITY DETERMINATIONS IN CASE NO. 23-CR-257, UNITED STATES OF AMERICA V. DONALD J. TRUMP | Case No. _____<br><br>Hearing Requested |

## MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PRESS APPLICATION FOR ACCESS TO THE GOVERNMENT'S MOTION FOR IMMUNITY DETERMINATIONS IN CASE NO. 23-CR-257, UNITED STATES OF AMERICA V. DONALD J. TRUMP

Applicants, 21 press organizations (the "Press Coalition"),[1] submit this Application to pursue maximum transparency into one of the most consequential judicial records in one of the most closely watched criminal cases in our nation's history: the Motion for Immunity Determinations (the "Immunity Motion") that the government has filed under seal in the prosecution of former President Trump on charges of subverting the electoral process, *United States of America v. Donald J. Trump* ("*U.S. v. Trump*"), No. 23-cr-257-TSC (D.D.C.).

Last term, the Supreme Court ruled that a former President (1) is absolutely immune from prosecution for the exercise of "core constitutional powers"; (2) is at least presumptively immune from prosecution for all other "official acts"; and (3) is categorically not immune from prosecution for "unofficial acts." *Trump v. United States* ("*Trump v. U.S.*"), 144 S. Ct. 2312, 2347 (2024). In the sealed Immunity Motion, the Government now "asks the Court to determine

---

[1] The Press Coalition consists of Advance Publications, Inc., American Broadcasting Companies, Inc. d/b/a ABC News, The Associated Press, Bloomberg L.P., Cable News Network, Inc., CBS Broadcasting, Inc. o/b/o CBS News, Gannett Co., Inc., Los Angeles Times Communications LLC, National Public Radio, Inc., NBCUniversal News Group, a division of NBCUniversal Media, LLC, The New York Times Company, News/Media Alliance, NOTUS (Allbritton Journalism Institute), POLITICO LLC, Pro Publica, Inc., Radio Television Digital News Association, Reuters News & Media Inc., Society of Professional Journalists, TEGNA Inc., Univision Networks & Studios, Inc., and WP Company LLC d/b/a The Washington Post.

that [Trump's] conduct in the course of the charged crimes is not subject to immunity." *See* Gov't's Mot. for Leave to File Under Seal at 1, *U.S. v. Trump*, ECF 246 (the "Sealing Motion").

The government has provided the Court with a "proposed redacted" version of the Immunity Motion "for filing on the public docket," which it claims will "allow[] an appropriate degree of public access." *Id.* at 2-3. The government's sealing argument errs in three ways, however, improperly limiting public access to this court record of surpassing public interest.

**First**, the government errs in claiming that the Immunity Motion is subject only to the common law right of access to court records and proceedings. *See* Sealing Motion at 8. The more powerful First Amendment right of access also applies to the records of preliminary proceedings in criminal cases, like this one, that test the legal validity of the charges. *See Press-Enter. Co. v. Super. Ct.*, 478 U.S. 1 (1986) ("*Press-Enterprise II*"). Moreover, all of the interests that the Supreme Court has held are advanced by public trials also favor access to pretrial immunity proceedings and records. *See Richmond Newspapers v. Virginia*, 448 U.S. 555, 569-80 (1980). The Court should therefore unseal the Immunity Motion with only those redactions that are both "essential to preserve higher values" and "narrowly tailored to serve that interest." *Press-Enter. Co. v. Super. Ct.*, 464 U.S. 501, 510 (1984) ("*Press-Enterprise I*").

**Second**, the government errs in seeking to redact "publicly-available materials." *See* Sealing Motion at 3. The government's asserted interest in protecting potential witnesses from "threats or harassment" is a compelling one, *id.*, but under the First Amendment right of access, even such a compelling interest does not justify withholding information "already within the public knowledge." *Washington Post v. Robinson*, 935 F.2d 282, 291 (D.C. Cir. 1991).

**Third**, the government errs in asking the Court to categorically redact "the names of individuals" other than those named "publicly in the superseding indictment." *See* Sealing

Motion at 3. Many of those individuals may already be identified in public reporting and official records, including the Final Report of the Select Committee to Investigate the January 6th Attack on the United States Capitol (the "House Committee Report")[2] and the Indictment in *State of Georgia v. Trump et al.*, No. 23SC188947 (Fulton Cnty. Super. Ct., Aug. 14, 2023) (the "Georgia Indictment").[3] Thus, although the government may be able to justify withholding *some* names, when disclosing a name would only "confirm[] to the public what was already validated by an official source," the First Amendment compels its disclosure. *Robinson*, 935 F.2d at 292.

For each of these reasons, the government's proposed redactions do not provide even the bare minimum of disclosure required under the common law, let alone the greater degree of access required under the First Amendment. The Court should therefore immediately release the redacted version of the Immunity Motion that the government proposes, given "the critical importance of *contemporaneous* access . . . to the public's role as overseer of the criminal justice process," *id.* at 287, and then, as soon thereafter as possible, release a less-redacted version of the Immunity Motion with only those redactions that pass the First Amendment right of access test.

## BACKGROUND

**A.     The 2020 Election And The January 6, 2021 Capitol Riot**

On November 3, 2020, Joseph R. Biden, Jr. was elected President of the United States. Then-President Trump, however, refused to concede, "claiming that the election was 'rigged' and characterized by 'tremendous voter fraud and irregularities.'" *Trump v. Thompson*, 20 F.4th 10, 17 (D.C. Cir. 2021). Trump "and his allies filed a series of lawsuits challenging the results of

---

[2] Available at https://www.govinfo.gov/content/pkg/GPO-J6-REPORT/pdf/GPO-J6-REPORT.pdf.

[3] Available at https://www.fultonclerk.org/DocumentCenter/View/2108/CRIMINAL-INDICTMENT.

the election. The courts rejected every one of the substantive claims of voter fraud that was raised." *Id.* But, according to the House Committee Report, Trump "disregarded the rulings of the courts and rejected the findings and conclusions and advice from his Justice Department, his campaign experts, and his White House and Cabinet advisors," and chose "to try to overturn the election on January 6th and took a series of very specific steps to attempt to achieve that result." H.R. Rep. No. 117-663 (Dec. 22, 2022), at 28.

On January 6, 2021, thousands of rioters stormed the Capitol in what the FBI described as a "blatant and appalling disregard for our institutions of government and the orderly administration of the democratic process." *See* Press Release, *Director Wray's Statement on Violent Activity at the U.S. Capitol Building*, FBI (Jan. 7, 2021), https://www.fbi.gov/news/press-releases/director-wrays-statement-on-violent-activity-at-the-us-capitol-building-010721. These events "marked the most significant assault on the Capitol since the War of 1812." *Thompson*, 20 F.4th at 18-19. The government has since charged more than 1,500 defendants with crimes related to the Capitol riot. *See, e.g.*, *44 Months Since the Jan. 6 Attack on the Capitol*, Dep't of Justice (Sept. 6, 2024), https://www.justice.gov/usao-dc/44-months-jan-6-attack-us-capitol.

Trump was impeached for "incitement of insurrection" the next week. H.R. Res. 24, 117th Cong. (Jan. 13, 2021), https://www.congress.gov/bill/117th-congress/house-resolution/24. House Impeachment Managers conducted a five-day trial before the Senate in February 2021, and the Senate voted to acquit Trump. *See, e.g.*, Jeremy Herb et al., *Trump acquitted for second time following historic Senate impeachment trial*, CNN (Feb. 14, 2021), https://www.cnn.com/2021/02/13/politics/senate-impeachment-trial-day-5-vote/index.html.

**B.     The Special Counsel's Investigation And The Initial Indictment**

In November 2022, U.S. Attorney General Merrick Garland appointed Jack Smith as Special Counsel "to conduct the ongoing investigation into whether any person or entity violated

4

the law in connection with efforts to interfere with the lawful transfer of power following the 2020 presidential election or the certification of the Electoral College vote held on or about January 6, 2021." *See* Off. of the Att'y Gen. Order No. 5559-2022 at 1 (Nov. 18, 2022), https://www.justice.gov/d9/press-releases/attachments/2022/11/18/2022.11.18_order_5559-2022.pdf. Attorney General Garland also authorized the Special Counsel to "prosecute federal crimes arising from the investigation of these matters" and "refer to the appropriate United States Attorney discrete prosecutions that may arise from the Special Counsel's investigation." *Id.* at 2.

On August 1, 2023, the Special Counsel's Office announced that a federal grand jury had indicted Trump, alleging that in late 2020 and early 2021, he knowingly made false claims about election fraud, *see* Indictment, *U.S. v. Trump*, ECF 1, ¶¶ 11-12, used deceit in an effort to get state officials to change election results in five key states, *id.* ¶¶ 13-52, attempted to organize fraudulent electors to send false certificates to Congress, *id.* ¶¶ 53-69, attempted to leverage the Justice Department to interfere with the election, *id.* ¶¶ 70-85, attempted to enlist the Vice President to fraudulently alter the election certification, *id.* ¶¶ 86-105, and exploited violence at the Capitol, *id.* ¶¶ 106-24. The initial indictment asserted four felony counts: Conspiracy to Defraud the United States (18 U.S.C. § 371), Conspiracy to Obstruct an Official Proceeding (18 U.S.C. § 1512(k)), Obstruction of and Attempt to Obstruct an Official Proceeding (18 U.S.C. §§ 1512(c)(2), 2), and Conspiracy Against Rights (18 U.S.C. § 241). *See generally id.*

### C. The Immunity Appeal

On October 5, 2023, Trump moved to dismiss the initial indictment on the basis of presidential immunity. *See* Mot. to Dismiss Indictment Based on Presidential Immunity, *U.S. v. Trump*, ECF 74. The District Court denied the motion. *See* Mem. Op. & Order, *id.*, ECF 171. Trump appealed to the D.C. Circuit, which affirmed. *See United States v. Trump*, 91 F.4th 1173

(D.C. Cir. 2024). Trump then petitioned for a writ of certiorari to the Supreme Court, which accepted the case, heard argument on April 25, 2024, and reversed, vacated, and remanded on July 1, 2024. *See generally Trump v. U.S.*, 144 S. Ct. 2312 (2024). The Supreme Court articulated a three-part framework for presidential immunity, under which a former President is categorically immune from prosecutions arising from exercising "core constitutional powers," is "at a minimum" presumptively immune from prosecutions arising from all other "official acts," and is categorically not immune for prosecutions arising from any "unofficial acts." *Id.* at 2347.

The Supreme Court directed the District Court, on remand, to "carefully analyze the indictment's remaining allegations to determine whether they too involve conduct for which a President must be immune from prosecution," and it instructed both "the parties and the District Court [to] ensure that sufficient allegations support the indictment's charges without such conduct." *Id.* at 2340. The Supreme Court further held that "[q]uestions about whether the President may be held liable for particular actions, consistent with the separation of powers, must be addressed at the outset of a proceeding," as part of the "pretrial review" process. *Id.* at 2344.

### D. The Superseding Indictment And Immunity Motion

On August 27, 2024, the government unsealed a Superseding Indictment against Trump, which "reflects [its] efforts to respect and implement the Supreme Court's holdings and remand instructions." Notice of Superseding Indictment, *U.S. v. Trump*, ECF 228. The next day, the government stated that it "intends to conduct its determinations related to immunity first and foremost." J. Status Rep. at 1, *id.*, ECF 229. To that end, the government proposed that it file its Immunity Motion, "which will explain why the immunity set forth in *Trump* does not apply to the categories of allegations in the superseding indictment or additional unpled categories of evidence that the Government intends to introduce at trial and will proffer in its brief." *Id.* at 2. The government added that its "proposed brief would provide the defendant and the Court with

6

detailed information regarding the 'content, form, and context,' of [Trump's] conduct, distinguish his private electioneering activity from official action, and rebut the presumption of immunity as to any conduct that the Court may deem official." *Id.*

On September 5, 2024, the Court ordered the government to "file an Opening Brief on Presidential Immunity by September 26, 2024," and stated that "[a]fter briefing, the court will determine whether further proceedings are necessary." Order at 2, *id.*, ECF 233. Two weeks later, Trump asked the Court to reconsider its scheduling order and "not permit" the government to file its Immunity Motion, which Trump criticized in advance as "a prejudicial and unwarranted advocacy piece." *See* Trump's Omnibus Reply in Further Supp. of Discovery Mots. at 2-3, *id.*, ECF 235. Similarly, in opposing the government's request for additional pages for the Immunity Motion, Trump preemptively called the filing "deeply suspect" and a "biased list of grievances." *See* Trump's Opp. to Gov't's Mot. for Oversized Filing at 3, *id.*, ECF 242.

The Court granted the government leave to file an oversized Immunity Motion and denied Trump's request to reconsider the scheduling order. Op. & Order, *id.*, ECF 243. As the Court explained, the Immunity Motion's "length and breadth . . . reflect[] the uniquely challenging and factbound nature of those determinations" that the Court must make as to immunity. *Id.* at 2. The Court further noted that Trump's objections to the timing of the filing improperly focused on "potential political consequences rather than legal prejudice." *Id.* at 5.

The government timely filed its Immunity Motion, under seal, on September 26, 2024, accompanied by the Sealing Motion. *See* Sealing Motion at 1. The Court unsealed the Sealing Motion the next day and ordered Trump to (1) "file under seal any objections to the proposed redactions" to the Immunity Motion by noon ET on October 1, 2024; and (2) "file under seal any

objections to the proposed redactions in the Appendix to that Motion by 5:00 PM on October 10, 2024." *See* Minute Order of Sept. 27, 2024, *U.S. v. Trump*.

Pursuant to Local Criminal Rule 57.6 and the First Amendment, which requires that courts "promptly allow interested persons an opportunity to be heard before ruling on [a sealing] motion and entering [a] sealing order," *see Robinson*, 935 F.2d at 289, the Press Coalition now submits this Application and requests that the Court apply the First Amendment right of access to the Immunity Motion and ultimately release that filing with only those limited redactions that can satisfy the demanding First Amendment right of access standard.

## ARGUMENT

The First Amendment and common law rights of access to court records are "a fundamental element of the rule of law, important to maintaining the integrity and legitimacy of an independent Judicial Branch." *Metlife, Inc. v. Fin. Stability Oversight Council*, 865 F.3d 661, 663 (D.C. Cir. 2017) (Garland, J.). Nowhere is the maintenance of integrity and legitimacy more important than in a case like this one, involving the historic and closely watched prosecution of a former President. Because the First Amendment right of access applies to the Immunity Motion, the Court should unseal it with only those narrow redactions that pass constitutional muster.

### I.   The First Amendment Right Of Access Applies To The Immunity Motion

"The Supreme Court has sketched a two-stage process for resolving whether the First Amendment affords the public access to a particular judicial record or proceeding." *Dhiab v. Trump*, 852 F.3d 1087, 1102 (D.C. Cir. 2017) (Williams, J., concurring). "First the court must determine whether a qualified First Amendment right of public access exists. If so, then . . . the record or proceeding may be closed only if closure is essential to preserve higher values and is narrowly tailored to serve that interest." *Id.* (cleaned up).

8

Courts follow the "experience and logic" test to determine where the constitutional right of access applies. *Press-Enterprise II*, 478 U.S. at 9. Under this test, the right of access attaches if "the place and process have historically been open to the press and general public" and if access "plays a significant positive role in the functioning of the particular process." *Id.* at 8. The Supreme Court has already conducted this experience and logic test for preliminary proceedings in criminal cases in *Press-Enterprise II* and concluded that the First Amendment right of access applies to such proceedings. *See id.* at 13. That conclusion is especially clear where, as here, the preliminary proceeding may result in dismissal of the indictment altogether. *See In re Time Inc.*, 182 F.3d 270, 271 (4th Cir. 1999) ("motions to dismiss the indictment" are "part of the proceedings to which the traditional First Amendment right of access applies"). The First Amendment right of access therefore applies to this preliminary proceeding to adjudicate Trump's assertion of presidential immunity in this criminal case.

### A.   Experience Supports Access To The Immunity Motion

The Supreme Court has long recognized the "tradition of accessibility to preliminary hearings" and related records in criminal cases. *Press-Enterprise II*, 478 U.S. at 10. As the Court observed, throughout our nation's history "preliminary hearings conducted before neutral and detached magistrates have been open to the public." *Id.* at 10. Indeed:

> Long ago in the celebrated trial of Aaron Burr for treason, for example, with Chief Justice Marshall sitting as trial judge, the probable-cause hearing was held in the Hall of the House of Delegates in Virginia, the courtroom being too small to accommodate the crush of interested citizens. From *Burr* until the present day, the near uniform practice of state and federal courts has been to conduct preliminary hearings in open court.

*Id.* at 10 (citation omitted). In sum, "[o]pen preliminary hearings . . . have been accorded the favorable judgment of experience." *Id.* at 11 (citation and internal marks omitted).

9

The preliminary hearing in *Press-Enterprise II*, like the pretrial immunity proceedings that the Supreme Court has now required in prosecutions of a former President arising from actions taken while in office, test the evidentiary and legal sufficiency of the charges "before a neutral magistrate." *Id.* at 12. These preliminary proceedings, to determine whether Trump is immune from prosecution arising from some or all of the conduct alleged in the Superseding Indictment, thus fit squarely within the tradition of access that the Supreme Court has identified.

In arguing against the First Amendment right of access here, the government misapprehends the experience prong. Citing *United States v. Brice*, 649 F.3d 793, 795 (D.C. Cir. 2011), the government asserts that the "Supreme Court and D.C. Circuit have recognized that [First Amendment] right of access only in limited circumstances dealing with various in-court proceedings and completed plea agreements—not motions like the Government's opening immunity filing." Sealing Motion at 8. For one, in *Brice* the D.C. Circuit expressly *did not decide* whether the First Amendment right of access applied to the type of proceeding at issue in that case (material witness proceedings), but rather assumed for the sake of argument that the right applied and held that the government's interest in secrecy – there, to protect "sensitive and intensely personal information" about "child sexual assault victims" – justified closure anyway. *Brice*, 649 F.3d at 796. For another, pretrial proceedings that test the validity of the indictment, such as this immunity proceeding, are clearly among the "circumstances" that the Supreme Court *has* held trigger the First Amendment right of access. *See Press-Enterprise II*, 478 U.S. at 10-11.

Moreover, to the extent the government is attempting to distinguish between a history of access to *proceedings* and a history of access to *records* of those proceedings, courts have conclusively rejected that distinction. *See, e.g.*, *In re New York Times Co.*, 828 F.2d 110, 114 (2d Cir. 1987) ("We agree that a qualified First Amendment right of access extends to such

10

documents."); *In re Washington Post Co.*, 807 F.2d 383, 390 (4th Cir. 1986) ("Because we conclude that the more rigorous First Amendment standard should apply in this context, we hold that the First Amendment right of access applies to documents filed in connection with plea hearings and sentencing hearings in criminal cases, as well as to the hearings themselves."); *Associated Press v. U.S. Dist. Ct.*, 705 F.2d 1143, 1145 (9th Cir. 1983) ("There is no reason to distinguish between pretrial proceedings and the documents filed in regard to them."). In fact, the possibility that the District Court might rule on the immunity question without a hearing on the Immunity Motion, *see supra* at 7, makes access to the filings themselves even more important. *See In re New York Times Co.*, 828 F.2d at 114.

Finally, the government asserts that "the material [it] seeks to seal has not historically been open to the press and general public," *see* Sealing Motion at 8 (cleaned up), which erroneously suggests the experience prong turns on whether there is a tradition of access to witness names, rather than a tradition of access to preliminary proceedings. The Supreme Court rejected an analogous argument in *Globe Newspaper Co. v. Superior Court*, where the Commonwealth of Massachusetts argued that although there is a right of access to criminal trials, that right should not extend to "the testimony of minor sex victims" during those trials. 457 U.S. 596, 605 n.13 (1982). As the Court explained in rejecting that proposition, it had already "discerned a First Amendment right of access *to criminal trials* based in part on the recognition that as a general matter criminal trials have long been presumptively open," regardless of the type of information that might appear in testimony at those trials. *Id.* (emphasis in original). Similarly, in *Press-Enterprise II*, the Supreme Court recognized the "First Amendment right of access to the transcript of a preliminary hearing growing out of a criminal prosecution," without regard to the particular type of information discussed during that hearing. 478 U.S. at 3, 10-13.

The Supreme Court has already recognized a First Amendment right of access to preliminary proceedings in criminal trials, regardless of the type of information at issue during any particular proceeding. The experience prong thus supports access to the Immunity Motion.

**B.      Logic Supports Access To The Immunity Motion**

The logic prong also firmly supports applying the First Amendment right of access to the Immunity Motion. The Supreme Court has observed that open criminal proceedings provide the public "confidence that standards of fairness are being observed" and "assurance that established procedures are being followed and that deviations will become known," such that "[o]penness thus enhances both the basic fairness of the criminal trial and the appearance of fairness so essential to public confidence in the system." *Press-Enterprise I*, 464 U.S. at 508-09. Public access also "has what is sometimes described as a 'community therapeutic value,'" such that "[w]hen the public is aware that the law is being enforced and the criminal justice system is functioning, an outlet is provided for these understandable reactions and emotions." *Id.* "Proceedings held in secret would deny this outlet and frustrate the broad public interest; by contrast, public proceedings vindicate the concerns of the victims and the community in knowing that offenders are being brought to account for their criminal conduct." *Id.* In addition, public access has an important "educative effect" that "affords citizens a form of legal education." *Richmond Newspapers*, 448 U.S. at 572 (citations and internal marks omitted).

Access to pretrial records and proceedings addressing presidential immunity advance all of these interests. Opening these records and proceedings to the public supports fairness and the appearance of fairness, provides an outlet for community emotion, and educates the American people about the application of a new legal test that could have profound effects on the power of the presidency. Moreover, because such a proceeding may be "the final and most important

12

step" in the prosecution of a former president, the proceeding and related records may provide "the sole occasion for public observation of the criminal justice system" where, as here, a former president is charged over actions taken while in office. *Press-Enterprise II*, 478 U.S. at 12-13. That the immunity determination is made in "the absence of a jury" at this preliminary stage also "makes the importance of public access . . . even more significant" still. *Id.*

Because logic supports public access to pretrial immunity proceedings in criminal cases, and related records, both prongs of the experience and logic test are satisfied here, and the First Amendment right of access applies to the Immunity Motion.

### II. The Court Should Unseal The Immunity Motion With Only Those Redactions That Satisfy The First Amendment Right Of Access

Under the First Amendment right of access, the Court should unseal the Immunity Motion with only those redactions that are "essential to preserve higher values" and "narrowly tailored to serve that interest." *Press-Enterprise I*, 464 U.S. at 510. The government fails that test, however, in seeking to redact "publicly-available materials" and all "names of individuals" other than those named "publicly in the superseding indictment." *See* Sealing Motion at 3.

#### A. The Government Cannot Justify Redacting Publicly Available Materials

The government states that it "has proposed limited redactions to some publicly-available materials, such as the defendant's Tweets," on the grounds that including that information in the Immunity Motion may cause "a chilling effect" on the future testimony of individuals identified in those publicly-available materials. *See* Sealing Motion at 3. Those proposed redactions cannot satisfy the First Amendment right of access and the Court should reject them accordingly.

In *Washington Post v. Robinson*, the government sought to seal a plea agreement that would have revealed District employee James McWilliams' cooperation in the prosecution of then-Mayor Marion Barry on federal drug charges, and the government argued that "the safety of

13

McWilliams and his family would have been placed at risk if the plea agreement had been disclosed, citing the fact that other cooperating witnesses in the investigation had been threatened." 935 F.2d at 291. Recognizing that such safety concerns can, in theory, justify sealing, the D.C. Circuit held that sealing was improper there because "McWilliams' cooperation was already within the public knowledge." *Id.* (citing news reports in The Washington Post). The D.C. Circuit stated that because disclosure "would only have confirmed to the public what was already validated by an official source . . . it could hardly have posed any additional threat to the ongoing criminal investigation," nor was "it evident how such disclosure could pose any extra threat to the safety of McWilliams and his family." *Id.* at 292. Thus, the D.C. Circuit held that "the government did not demonstrate a compelling interest to justify sealing." *Id.*

So, too, here. Any information that the government proposes to redact from publicly available materials is, by definition, "already within the public knowledge," and the First Amendment does not permit the government to withhold such information from an otherwise-public judicial record. *Id.* at 291. The Court should therefore reject the government's proposed redactions to publicly available material within the Immunity Motion.[4]

### B. The Government Cannot Justify Categorically Redacting Names Other Than Those Identified In The Superseding Indictment

The government's proposal to redact names of individuals other than those "whose names appear publicly in the superseding indictment" fails on the same grounds. The Superseding Indictment refers to but does not name, among other individuals, Trump's Campaign Manager, *see* Superseding Indictment ¶ 18, *U.S. v. Trump*, ECF 226; the Arizona Governor and House

---

[4] Even if the Court were to apply only the common law right of access to the Immunity Motion, as the government requests, the public nature of the material that the government proposes to redact weighs heavily against sealing under *Hubbard* factors two (extent of previous public access), four (strength of privacy interests asserted), and five (possibility of prejudice). *See United States v. Hubbard*, 650 F.2d 293, 317-22 (D.C. Cir. 1980).

14

Speaker, *see id.* ¶ 19; the Georgia Attorney General and Secretary of State, *id.* ¶¶ 29, 33; the White House Chief of Staff, *id.* ¶ 33; the Chairwoman of the Republican National Committee, *id.* ¶ 36; and the Senate Majority Leader and House Speaker of Michigan, *id.* ¶¶ 36-37.  Because the names of the persons holding those positions during the relevant time period are all a matter of public record, the First Amendment does not permit their redaction from the Immunity Motion.

The Superseding Indictment also refers to five alleged unnamed "co-conspirators" whom Trump "enlisted . . . to assist him in his criminal efforts to overturn the legitimate results of the 2020 presidential election and retain power."  *Id.* ¶ 9.[5]  All but one of those alleged co-conspirators have been identified by name by matching details in the charging documents to other publicly available materials.  *See, e.g.*, Holly Bailey et al., *Here are the Trump co-conspirators described in the DOJ indictment*, The Washington Post (Aug. 1, 2023), https://www.washingtonpost.com/national-security/2023/08/01/doj-trump-indictment-trump-coconspirators/ (identifying Co-Conspirator 1 as Rudy Giuliani; Co-Conspirator 2 as John Eastman; Co-Conspirator 3 as Sidney Powell; and Co-Conspirator 5 as Kenneth Chesebro); Marshall Cohen, *Who are the Trump co-conspirators in the 2020 election interference indictment?*, CNN (Aug. 1, 2023), https://www.cnn.com/2023/08/01/politics/co-conspirators-trump-indictment/index.html (same); Robert Costa et al., *Who are the co-conspirators in the Trump Jan. 6 indictment?*, CBS News (Aug. 3, 2023), https://www.cbsnews.com/news/who-are-the-co-conspirators-in-the-trump-indictment/ (same).  These names are thus "already within the public knowledge" and the First Amendment does not permit their redaction.

---

[5] The original Indictment referred to a sixth co-conspirator who has since identified himself.  *See* Rebecca Beitsch, *Jeffrey Clark cites removal from Trump indictment in bid to keep law license*, The Hill (Aug. 29, 2024), https://thehill.com/homenews/4854010-jeffrey-clark-trump-law-license/.

The government's proposed categorical redaction of names is all the more troubling because several of these individuals are also discussed by name in the House Committee Report in connection with the same conduct detailed in the Superseding Indictment. *Compare, e.g.,* Superseding Indictment ¶ 57 ("Co-Conspirator 5 explained that Co-Conspirator 1 had heard from a state official and state provisional elector that 'it would appear treasonous for the AZ electors to vote on Monday if there is no pending court proceeding'"), *and id.* ¶ 70 (Co-Conspirator 2 wrote "that neither the Constitution nor the ECA provided the Vice President discretion in the counting of electoral votes, or permitted him to 'make the determination on his own'"), *with* House Committee Report at 363 n. 39 (identifying Co-Conspirator 1 as Giuliani and Co-Conspirator 5 as Chesebro), *and id.* at 432 & n.35 (identifying Co-Conspirator 2 as Eastman). Moreover, several of these individuals have been criminally charged in the State of Georgia on conspiracy allegations similar to those at issue in the Superseding Indictment. *See generally* Georgia Indictment (charging, among others, Giuliani, Eastman, Chesebro, and Powell).[6]

The First Amendment does not permit the government to categorically redact all names from the Immunity Motion other than those identified in the Superseding Indictment when disclosing at least some of those names would only "confirm[] to the public what was already validated by an official source." *Robinson*, 935 F.2d at 292. The Court should therefore reject the government's proposed categorical redactions and permit the government to redact only those names as to which the government can show that redaction is "essential to preserve higher values" and "narrowly tailored to serve that interest." *Press-Enterprise I*, 464 U.S. at 510.

---

[6] Again, even if the Court were to apply only the common law right of access to the Immunity Motion, *Hubbard* factors two, four, and five would weigh against sealing any names that are already a matter of public knowledge. *See supra* note 4.

16

\* \* \* \* \*

The government's proposed redactions to the Immunity Motion do not satisfy the First Amendment right of access. But "[t]he perfect must not be the enemy of the good." *See TWA, Inc. v. C.A.B.*, 385 F.2d 648, 658 (D.C. Cir. 1967). Given "the critical importance of *contemporaneous* access . . . to the public's role as overseer of the criminal justice process," *Robinson*, 935 F.2d at 287, the Court should immediately release the government's proposed redacted version of the Immunity Motion and then, as soon afterwards as possible, release a less-redacted version with only those withholdings that satisfy the First Amendment.

## CONCLUSION

For the foregoing reasons, the Press Coalition respectfully requests that the Court immediately unseal the government's proposed redacted version of the Immunity Motion and then, as promptly as possible, release a less redacted version of the Immunity Motion consistent with the First Amendment.

Dated: October 1, 2024

Respectfully submitted,

BALLARD SPAHR LLP

/s/ *Chad R. Bowman*
Chad R. Bowman (#484150)
Charles D. Tobin (#455593)
Maxwell S. Mishkin (#1031356)
Lauren P. Russell (#1697195)
1909 K Street NW, 12th Floor
Washington, DC 20006
Tel: (202) 661-2200
Fax: (202) 661-2299
bowmanchad@ballardspahr.com
tobinc@ballardspahr.com
mishkinm@ballardspahr.com
russelll@ballardspahr.com

*Counsel for the Press Coalition*

## CERTIFICATE OF SERVICE

I hereby certify that on this 1st day of October, 2024, I caused true and correct copies of the foregoing to be served via electronic mail and U.S. Mail on the following:

John Pellettieri
Erin Pulice
U.S. Department of Justice
Special Counsel's Office
950 Pennsylvania Avenue NW
Room B-206
Washington, DC 20530

*Counsel for the United States*


John F. Lauro
Gregory M. Singer
LAURO & SINGER
400 N. Tampa Street, 15th Floor
Tampa, FL 33602

Todd Blanche
Emil Bove
BLANCHE LAW PLLC
99 Wall Street, Suite 4460
New York, NY 10005

*Counsel for Defendant* (via email only, by consent)

/s/ *Chad R. Bowman*
Chad R. Bowman